```
         IN THE UNITED STATES DISTRICT COURT
             WESTERN DISTRICT OF ARKANSAS
                  HOT SPRINGS DIVISION
```

TROTT'S WOODPRODUCTS, INC.,
d/b/a DIAMOND DOORS                                    PLAINTIFF

         v.          Civil No. 06-6069

AMERICAN CABINET DOORS & MORE,
INC., and DEBBIE TUCKER,
Individually                                          DEFENDANTS

## O R D E R

On the 12th day of February, 2007, came on for hearing the plaintiff's **Application For Temporary Restraining Order For False Advertisement, Unfair Competition, And Deceptive Trade Practices** (document #3), and from said application, the response thereto, the evidence presented at the hearing, and the arguments of counsel, the Court finds and orders as follows:

1. Plaintiff Trott's WoodProducts, Inc., d/b/a Diamond Doors ("Diamond Doors") alleges that defendants American Cabinet Doors and More, Inc. ("American Cabinet Doors") and Debbie Tucker ("Tucker") violated the Lanham Act and Arkansas law. Count I of the Complaint alleges a violation of the Lanham Act by false advertising; Count II alleges unfair competition under Arkansas common law; Count III alleges violation of the Lanham Act by false designation of origin; and Count IV alleges deceptive trade practices.

The gravamen of the claim, in each case, is that American Cabinet Doors is using - to illustrate its sales brochure -

photographs of sample cabinet doors produced by Diamond Doors which were taken for use in illustrating Diamond Doors' own sales brochure.

Diamond Doors also alleges that Tucker, who used to work for Diamond Doors, took original photos, price lists, customer lists, and manufacturing information when she left the employment of Diamond Doors, and is using it to further the business interests of American Cabinet Doors.

Defendants deny the material allegations of the Complaint, arguing that the pictures of cabinet doors are simply pictures of generic types and styles of cabinet doors used throughout the industry.

Upon motion of Diamond Doors, the Court now takes up the issue of whether preliminary injunctive relief is appropriate as to any of its claims.

2.  In order to establish its right to preliminary injunctive relief, Diamond Doors must satisfy the four factors set out in **Dataphase Systems, Inc. v. CL Systems, Inc.**, **640 F.2d 109 (8th Cir. 1981):**

* Is there a threat of irreparable harm to Diamond Doors?
* What is the balance between harm to Diamond Doors if injunctive relief is not granted, and harm to the defendants if it is granted?
* What is the probability that Diamond Doors will succeed

>     on the merits?
> 
> *     What is the public interest?
> 
> 3.    <u>The Likelihood of Irreparable Harm</u>:

Turning first to the touchstone of injunctive relief - irreparable harm - the Court finds that Diamond Doors produced no evidence of irreparable harm at the hearing, and indeed, no evidence of harm at all.  One customer called to its attention that advertising materials received from American Cabinet Doors appeared to contain photographs of sample doors manufactured by Diamond Doors, but there was no evidence of harm flowing therefrom.

The Court is aware that "[i]n cases of trademark infringement, irreparable harm is presumed from proof of likelihood of success on the merits." **<u>Solutech, Inc. v. Solutech Consulting Services, Inc.</u>, 153 F.Supp.2d 1082 (E.D. Mo. 2000).** However, as explained *infra*, paragraph 4, Diamond Doors has not shown a likelihood of success on the merits of its trademark infringement claim, and thus the Court will not presume damages at this stage of the proceedings.

> 3.    <u>The Balance of Harms</u>:

There is little evidence as to the balance of harms as between the litigants.  There is no showing that American Cabinet Doors would be harmed by having to stop using the sales brochure it currently uses, but considering that Diamond Doors has shown no

harm if American Cabinet Doors continues to use the sales brochure, this factor carries no weight in the Court's analysis.

    4.   <u>The Probability of Success on the Merits</u>:

(a) Count I alleges violation of the Lanham Act by false advertising. To establish such a claim, Diamond Doors must prove:

- a false statement of fact by American Cabinet Doors about its own or another's product;
- which has deceived, or has a tendency to deceive, a substantial segment of the advertising audience;
- which is material, in that it is likely to influence a purchasing decision;
- which has entered interstate commerce; and
- which injures, or is likely to injure, Diamond Doors.

**American Italian Pasta Co. v. New World Pasta Co.**, **371 F.3d 387 (8th Cir. 2004).**

Diamond Doors' proof failed to satisfy these criteria. There was no evidence that the photos in question deceived - or had a tendency to deceive - a substantial segment of the advertising audience. Nor was there evidence that if any deception were to occur, it would be likely to influence a purchasing decision, or to injure Diamond Doors. The only evidence that even touched on these points was that one of Diamond Doors' customers received a brochure from American Cabinet Doors which it perceived as containing photos of Diamond Doors' products. The customer called

this to the attention of Diamond Doors, but there was no evidence that the brochure influenced the customer, or resulted in any lost sales for Diamond Doors.

(b) Count II alleges unfair competition under Arkansas common law. That law provides that when a trademark "has acquired a secondary meaning, the original user has a property right which equity will protect against unfair appropriation by a competitor." **Tri-County Funeral Service, Inc. v. Eddie Howard Funeral Home, Inc.**, **330 Ark. 789, 957 S.W.2d 694 (1997)**.

> The concept of "secondary meaning" is explained as follows:
>
> There are certain names, marks, and symbols which in their primary sense are merely generic or descriptive and do not ordinarily indicate the origin of goods or services. Such names, marks, or symbols, when used in their primary sense, cannot form the subject matter of a trade or service mark. However, a name, mark, or symbol by long and exclusive use and advertising by one person in the sale of his goods and services may become so associated in the public mind with such goods or services that it serves to identify them and distinguish them from the goods or services of others. When such an association exists, the name, mark, or symbol is said to have acquired "secondary meaning" in which the original user has a property right which equity will protect against unfair appropriation by a competitor.

**Tri-County**, *supra*, quoting **Liberty Mutual Insurance Co. v. Liberty Insurance Co. of Texas**, **185 F.Supp. 895 (E.D. Ark. 1960)**.

To the extent that they might be considered trade marks at all, the photographs here - being nothing more than examples of styles of cabinet doors - fall into the generic category and are not protectible under Arkansas common law.

To the extent that - as Diamond Doors alleges in its Complaint - the use of the photographs by American Cabinet Doors infringes the alleged trademark "Diamond Doors," it presented no evidence to support that theory.  The testimony of John Swisher, who has worked for Diamond Doors, American Cabinet Doors, and another door manufacturer, and is currently the production manager for American Cabinet Doors, was to the effect that it would take a highly trained eye such as his, with years in the business, to look at any of the types of cabinet door which are standard in the trade and determine - as between two different manufacturers - which one made it.  The Court's own observation of demonstrative evidence at trial bears that out.  Since the name "Diamond Doors" was not used by American Cabinet Doors, there was no association in the advertising materials of American Cabinet Doors with Diamond Doors, and therefore no chance that a customer would confuse the products of the two companies.

(c)  To prove a claim of false designation of origin under the Lanham Act, as alleged in Count III, the first step is to establish that a mark is protectible.  Use of a protected mark is a prerequisite to finding a Lanham Act violation.  **DaimlerChrysler AG v. Bloom**, 315 F.3d 932 (8th Cir. 2003).

In Lanham Act jurisprudence, trademarks are categorized as either generic, descriptive, suggestive, or arbitrary.  A generic mark is never protectible, and descriptive marks generally are not

-6-

protectible, while suggestive and arbitrary marks are "inherently distinctive and protectible."  **Schwan's IP, LLC v. Kraft Pizza Co.**, **460 F.3d 971 (8th Cir. 2006)**.

The evidence at the hearing was that Diamond Doors had made sample cabinet doors in the styles it produces, and then had photographs taken of those sample doors which it used in putting together a sales brochure.  The gravamen of its Complaint is that defendants, without permission, used those same photographs to put together a brochure advertising the cabinet doors produced by American Cabinet Doors.  There was no evidence that American Cabinet Doors used the mark "Diamond Doors," but only the pictures of cabinet doors.

The evidence was to the effect that the pictures merely depicted styles of cabinet doors which are commonly produced in the industry.  None of them was a style of door originated by or unique to Diamond Doors.  They were, at best, only a generic mark and not entitled to trademark protection under the Lanham Act.

Notwithstanding the foregoing analysis, Diamond Doors contends that it should prevail under the teachings of **Truck Equipment Service Co. v. Fruehauf Corp.**, **536 F.2d 1210 (8th Cir. 1976)**.  That case is distinguishable, in that the design there photographed was one which had acquired secondary meaning.  The court therein noted that the unfairness of Fruehauf's conduct was in "using the photograph of (TESCO's) trailer to trade upon the

reputation of (TESCO) and to confuse potential customers as to the source of origin of the trailer pictured on the sales literature." **536 F.2d at 1216.** Here there is no evidence of acquired secondary meaning, no evidence that any customer might be confused, and nothing upon which to base a finding that American Cabinet Doors was - or had any possibility of - trading on the reputation of Diamond Doors.

(d)  To prevail on Count IV, the Arkansas Deceptive Trade Practices Act ("ADTPA") claim, Diamond Doors must prove that American Cabinet Doors knowingly made "a false representation as to the . . . sponsorship. . . of goods or services." **A.C.A. §4-88-107(a)(1).** Diamond Doors also must establish that it has suffered "actual damage or injury as a result of an offense or violation as defined" in the ADTPA. **A.C.A. §4-88-113(f).** As noted above, Diamond Doors failed to adduce any evidence of actual damage.

The Court concludes, from the foregoing, that Diamond Doors has not shown a likelihood of success on the merits of any of its claims.

5.  <u>The Public Interest</u>:

The public interest is served both by enforcing valid trademark protection and by encouraging free competition. Thus, to the extent either party's position has merit, the public interest would weigh in its favor. Because the Court has found

the likelihood that Diamond Doors would succeed on any claim to be small, this factor weighs in favor of American Cabinet Doors.

6.   Because Diamond Doors has failed to demonstrate its entitlement to injunctive relief, its motion for same will be denied.

**IT IS THEREFORE ORDERED** that plaintiff's **Application For Temporary Restraining Order For False Advertisement, Unfair Competition, And Deceptive Trade Practices** (document #3) is **denied.**

**IT IS SO ORDERED,** this 26th day of February, 2007.

                             /s/ Jimm Larry Hendren
                             **JIMM LARRY HENDREN**
                             **UNITED STATES DISTRICT JUDGE**